UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



_____

HARPAL SINGH KACHUR,

    Petitioner,

  v.                26-CV-169 (JLS)

JOSEPH FREDEN, *in his official
capacity as Field Office Director,
Buffalo Field Office, U.S. Immigration
& Customs Enforcement*; STEVEN
KURZDORFER, *in his official capacity
as Acting Field Office Director, Buffalo
Field Office, U.S. Immigration &
Customs Enforcement*; ACTING
DIRECTOR TODD LYONS, *in his
official capacity as Acting Director, U.S.
Immigration and Customs Enforcement*;
KRISTI NOEM, *in her official capacity
as Secretary of Homeland Security*,

    Respondents.

_____

## DECISION AND ORDER

Petitioner Harpal Singh Kachur is a citizen of India.  Dkt. 1 ¶¶ 1, 42.  He

"entered the United States without inspection on or about March 31, 2023." *Id.*

¶¶ 1, 42.  He currently has immigration proceedings ongoing, and has been detained

in Immigration and Customs Enforcement custody since October 6, 2025. *See id.*

¶¶ 5, 42, 45.[1]  Petitioner has provided no evidence that he lawfully entered the

_____

[1] Petitioner was apprehended shortly after entering the United States and was
released by Immigration and Customs Enforcement ("ICE") on or about April 3,
2023. *Id.* ¶¶ 1, 42.

United States. On the record before the Court, he has not been admitted and is in the United States without legal authority.

Petitioner filed a petition for habeas corpus pursuant to 28 U.S.C. § 2241 on January 29, 2026. Dkt. 1. He also moved for a temporary restraining order and preliminary injunctive relief.[2] Dkt. 4. Respondents moved to dismiss the petition (Dkt. 10), and Petitioner responded (Dkt. 11).

In the petition, Petitioner argues that he is entitled to relief because Respondents are detaining him improperly under 8 U.S.C. § 1225(b) rather than 8 U.S.C. § 1226(a), making him ineligible for a bond hearing and subjecting him to mandatory detention. *See* Dkt. 1 ¶¶ 5–7, 18–41. He argues that Respondents' statutory classification of him violates the statute, his due process rights under the Fifth Amendment, his Fourth Amendment rights, and the *Accardi* doctrine. *See id.* at 15–19.[3] He asks this Court to: (1) order Respondents to produce the Department of Homeland Security's administrative record as to him; (2) clarify that the statutory basis for his detention is Section 1226(a) and not Section 1225(b)(2)(A); (3) require Respondents to release him, unless they provide him with a bond hearing, pursuant to Section 1226(a), within fourteen days; and (4) award him attorney fees and costs. *Id.* at 18–20.

---

[2] The Court denied the portion of the temporary restraining order/preliminary injunction motion that requested an order enjoining Respondents from transferring Petitioner outside the Western District of New York and a temporary stay of removal. Dkt. 5. The Court reserved decision on the balance of the motion for and resolves the open portion here. *See id.*

[3] Page references are to the numbering automatically generated by CM/ECF, which appears in the header of each page.

This Court previously addressed similar arguments regarding detention under Section 1225(b) and denied the habeas petition of a detainee seeking similar relief. In particular, the Court concluded that Section 1225(b)(2)(A) and Section 1226(a)—read together—do not require a bond hearing where the petitioner has not been admitted to the United States. The Court also concluded that it had jurisdiction to decide such a habeas petition, and that exhaustion is not required under such circumstances. Because the legal analysis is the same here, the Court relies on its previous decision, a copy of which is appended here as **Exhibit A**, and incorporates its analysis into this decision and order. For the reasons explained in that decision and order, Petitioner is not entitled to a release or bond hearing here. *See also Buenrostro-Mendez v. Bondi*, 155 F.4th 494 (5th Cir. 2026). His petition, therefore, is denied.[4]

Because this decision and order terminates this habeas proceeding, Petitioner's request for injunctive relief pending the resolution of the proceeding is denied as moot.[5]

---

[4] Because, as discussed above and in the Court's previous decision and order, the statute authorizes Petitioner's detention, the administrative record was not necessary to resolve the petition. *See* Dkt. 1, at 18–19.

[5] For the reasons discussed above and in the Court's previous decision and order, Petitioner is not entitled to a temporary restraining order/preliminary injunction on the statutory classification issue in any event because he cannot meet the relevant standard. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (moving party must establish: (1) a likelihood of irreparable harm absent preliminary relief; (2) a likelihood of success on the merits; (3) the balance of equities tipping in favor of the moving party; and (4) that the public interest is served by an injunction); *see also Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024) ("The default rule is that a plaintiff seeking a preliminary injunction must make a clear showing that 'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the

The Court notes that Petitioner has been detained for approximately five months. *See* Dkt. 1 ¶¶ 5, 48. He does not, however, raise a due process argument based on prolonged detention. *See generally* Dkt. 1; Dkt. 7. As such, the Court does not further address the issue here, on this record, but refers to its discussion of prolonged detention in its previous decision and order.

## CONCLUSION

For the reasons stated above and in the decision and order appended as **Exhibit A**, the Court grants Respondents' motion to dismiss (Dkt. 10), denies the relief requested in the petition (Dkt. 1), and denies the balance of Petitioner's temporary restraining order/preliminary injunction motion (Dkt. 4). The Clerk of Court shall close this case.

SO ORDERED.

Dated:        March 3, 2026
              Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE

---

absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'") (quoting *Winter*, 555 U.S. at 20); *Jones v. Wolf*, 467 F.Supp.3d 74, 81 (W.D.N.Y. 2020) (the "same standard" governs consideration of an application for a TRO).

5

# EXHIBIT A

5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



---

JOSIMAR FERREIRA CANDIDO, *also
known as Josimar Ferreira Miranda*,

Petitioner,

v.

PAMELA BONDI, *in her official
capacity as Attorney General of the
United States*, KRISTI NOEM, *in her
official capacity as Secretary of the
Department of Homeland Security*,
STEVEN KURZDORFER, *in his official
capacity as Field Office Director, ICE
Buffalo Field Office*, JOSEPH
FREDEN, *Deputy Field Office Director,
Buffalo Field Office, Buffalo Federal
Detention Facility*,

Respondents.

---

25-CV-867 (JLS)

## DECISION AND ORDER

By statute, aliens who enter the United States illegally—and remain illegally—may be detained by the Government, for removal proceedings, without a bond hearing. This outcome is driven by a straightforward and fair reading of the governing statute. As a result, Respondents' motion to dismiss must be granted and the petition denied.

## BACKGROUND

Petitioner Josimar Ferreira Candido is a native and citizen of Brazil. Dkt. 1 ¶ 5. He has lived in the United States since 2004. *Id.* ¶ 10. He currently has immigration proceedings ongoing in Boston, Massachusetts, and has been detained in Immigration and Customs Enforcement custody since September 5, 2025. *Id.* Petitioner has provided no evidence that he lawfully entered the United States. On the record before the Court, he has not been admitted and is in the United States without legal authority.

Petitioner filed a petition for habeas corpus pursuant to 28 U.S.C. § 2241[1] on September 12, 2025. Dkt. 1. Respondents moved to dismiss the petition. Dkt. 19. Petitioner replied (Dkt. 22), and also provided notice of administrative proceedings related to bond (Dkt. 24; Dkt. 25; Dkt. 26). At the Court's request, both parties filed supplemental submissions addressing relevant caselaw and status updates. Dkt. 28; Dkt. 32; Dkt. 34; Dkt. 35; Dkt. 36; Dkt. 37; *see also* Dkt. 39; Dkt. 40; Dkt. 41.

---

[1] He also filed numerous emergency requests, which the Court resolved in a separate decision and order. *See* Dkt. 29. Only the petition itself, and Respondents' motion to dismiss the petition, remain for the Court to resolve.

2

## DISCUSSION[2]

Section 1225(b)(2)(A) provides for detention pending removal proceedings: "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under [S]ection 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). "Applicant for admission" includes those "who [have] not been admitted *or* who arrive[] in the United States (whether or not at a designated port of arrival) . . . ." 8 U.S.C. § 1225(a)(1) (citation modified). A fair reading of the statute, in context, requires detention of aliens, such as Petitioner, who have not been admitted.[3]

Nevertheless, Petitioner attempts to draw a distinction between "applicant for admission" and "seeking admission," such that they should provide for divergent outcomes entitling some "applicants" to bond hearings under Section 1226(a). That argument fails because "seeking admission" is not a limitation or a

---

[2] Before addressing the merits, the Court confirms that it has jurisdiction over the petition, notwithstanding 8 U.S.C. §§ 1252(e)(3) and (g). Petitioner challenges his detention and seeks a bond hearing under Section 1226. Because he does not challenge the Attorney General's decision or action "to commence proceedings, adjudicate cases, or execute removal orders," Section 1252(g) does not strip this Court of jurisdiction to address his petition. *See* 8 U.S.C. § 1252(g); *see also Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) ("Noncitizens are . . . entitled to challenge through habeas corpus the legality of their ongoing detention."). And because he does not challenge the validity of the system under Section 1225(b), Section 1252(e)(3) does not funnel jurisdiction over this petition to the United States District Court for the District of Columbia. *See* 8 U.S.C. § 1252(e)(3).

[3] It bears noting that an "alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States." 8 U.S.C. § 1225(a)(4).

3

separate classification.  Rather, as discussed below, the terms are synonyms—a conclusion based on a fair reading of the statute and the ordinary meaning of its terms.

First, the alteration in terms is repeated in similar fashion, such that "[a]ll aliens . . . who are applicants for admission *or* otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers."  8 U.S.C. § 1225(a)(3) (citation modified).

Moreover, the "term 'application for admission' has reference to the application for admission into the United States and not to the application for the issuance of an immigrant or nonimmigrant visa."  8 U.S.C. § 1101(a)(4) (definitions that apply to Chapter 12, which includes Section 1225).  Indeed, the "terms 'admission' and 'admitted' mean, with respect to an alien,[4] the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."  8 U.S.C. § 1101(a)(13)(A) (definitions that apply to Chapter 12, which includes Section 1225).[5]

---

[4] "Alien" means "any person not a citizen or national of the United States."  8 U.S.C. § 1101(a)(4).

[5] Similarly, an "alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien . . . is attempting to enter at a time or place other than as designated by immigration officers or has not been admitted to the United States after inspection and authorization by an immigration officer."  8 U.S.C. § 1101(a)(13)(C)(vi).

The statutory scheme thus reveals that the terms "applicant for admission" and "seeking admission" are synonymous.[6] As such, one who enters the country unlawfully is an "applicant for admission" subject to detention without a bond hearing—and is not someone other than that under the statute who might be entitled to Section 1226(a) treatment. In other words, detention under Section 1225(b)(2)(A) is not reserved for aliens "seeking admission," as if that were a different category from "applicants for admission."

Second, "applicant" and "seeker" are, indeed, accepted synonyms. *See* ROGET'S II: THE NEW THESAURUS 45 (3rd ed. 1995); *Synonyms of applicant*, MERRIAM-WEBSTER THESAURUS, https://www.merriam-webster.com/thesaurus/applicant (last visited Dec. 3, 2025).

Moreover, "seek" is defined as "to ask for" or "request." *Definition of seek*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/seek (last visited Dec. 3, 2025). And "applicant" means "[s]omeone who requests something." *Applicant*, BLACK'S LAW DICTIONARY (11th ed. 2019).

And third, there is no "material variation" in meaning between these two terms; as such, there is no reason to apply interpretive canons. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 170 (2012)

---

[6] In a different context, the Fourth Circuit recognized the interchangeable nature of these terms. *See Jimenez-Rodriguez v. Garland*, 996 F.3d 190, 194 n.2 (4th Cir. 2021) ("As for the limitation of these waivers to those 'seeking admission,' the INA states that 'an alien present in the United States who has not been admitted shall be deemed for purposes of this chapter an applicant for admission.' . . . Because Jimenez-Rodriguez was never lawfully admitted, he qualifies as someone 'seeking admission' . . . .") (citation modified)).

5

("A word or phrase is presumed to bear the same meaning throughout a text; a material variation in terms suggests a variation in meaning.").[7] Rather, "[w]ords are to be understood in their ordinary, everyday meanings—unless the context indicates that they bear a technical sense." *Id.* at 69 (Canon 6: Ordinary-Meaning Canon). And the "words of a governing text are of paramount concern, and what they convey, in their context, is what the text means." *Id.* at 56 (Canon 2: Supremacy-of-Text Principle).

In sum, the statutory structure, the fact that the terms are synonyms, the immaterial alteration, and ordinary meaning all point to the conclusion that Section 1225(b)(2)(A) speaks of only one type of alien—one *who has not been admitted* or who "arrives"—and does not create a subset only as to which the statute actually applies.

Petitioner argues that he nevertheless should receive a bond hearing under Section 1226(a),[8] which provides, as relevant here:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection

---

[7] "[M]ore than most other canons," this canon of the presumption of consistent usage "assumes a perfection of drafting that, as an empirical matter, is not often achieved." *Id.* "[D]rafters . . . often (out of a misplaced pursuit of stylistic elegance) use different words to denote the same concept." *Id.*

[8] The Court recognizes that Petitioner made efforts to exhaust administrative remedies. *See* Dkt. 24; Dkt. 25; Dkt. 26. Exhaustion, however, is not required here because such efforts would be futile, given that immigration judges are bound by *Yajure Hurtado*, 29 I. & N. Dec. 216, 229 (B.I.A. 2025).

> (c)[9] and pending such decision, the Attorney General . . . (1) may continue to detain the arrested alien; and (2) may release the alien on . . . bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or . . . conditional parole . . . .

8 U.S.C. § 1226(a). He argues that he is not an alien "seeking admission" because he already had been in the country and, therefore, his detention is governed by Section 1226.

Section 1225(b)(2)(A) and Section 1226(a)—read together—do not require a bond hearing and, instead, permit Respondents to proceed without one here.[10] In fact, because Petitioner has not been "admitted" into the United States, his argument that he is not also "seeking admission" creates his own extra-statutory status. Under such status, after *some undetermined period of time* of merely residing unlawfully in the United States, he no longer is "seeking admission" and, thereby, converts himself to bond-eligible under Section 1226(a) by nothing more than remaining in the country unlawfully.

Relevant here, too, is the Supreme Court's observation that, with "a few exceptions . . . , the Attorney General may 'for urgent humanitarian reasons or significant public benefit' temporarily parole aliens detained under [Sections] 1225(b)(1) and (b)(2)," and that the "express exception to detention implies that there are no *other* circumstances under which aliens detained under [Section]

---

[9] Subsection (c) relates to the detention of criminal aliens. *See* 8 U.S.C. § 1226(c). Neither party argues that this subsection applies to Petitioner.

[10] The government reserves Section 1226 to aliens who have been admitted. *See* Dkt. 19-1, at 11.

1225(b) may be released." *Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018) (quoting

8 U.S.C. § 1182(d)(5)(A), and citing ANTONIN SCALIA & BRYAN A. GARNER, READING

LAW: THE INTERPRETATION OF LEGAL TEXTS 107 (2012)) (citation modified).[11]

For all of these reasons, the Court is satisfied that the statute does not

require a bond hearing here.  This result is also consistent with the primacy of the

political branches in this area of law.[12]  A contrary result in this case ignores these

---

[11] The particular canon cited from Scalia and Garner's text was the "Negative–Implication Canon," under which the "expression of one thing implies the exclusion of others (*expressio unius est exclusio alterius*)." *Id.*

[12] The Supreme Court's holding in *Demore v. Kim*, 538 U.S. 510 (2003), aligns with its prior recognition that "the responsibility for regulating the relationship between the United States and [its] alien visitors [is] committed to the political branches of the Federal Government." *Mathews v. Diaz*, 426 U.S. 67, 81 (1976).  Indeed, "[o]ver no conceivable subject is the legislative power of Congress more complete." *Reno v. Flores*, 507 U.S. 292, 305 (1993) (citation modified).  Because decisions regarding immigration "may implicate [the United States'] relations with foreign powers, and [because] a wide variety of classifications must be defined in the light of changing political and economic circumstances, such decisions are frequently . . . more appropriate [for] either the Legislature or the Executive than [for] the Judiciary." *Diaz*, 426 U.S. at 81; *see also United States v. Valenzuela-Bernal*, 458 U.S. 858, 864 (1982) ("The power to regulate immigration—an attribute of sovereignty essential to the preservation of any nation—has been entrusted by the Constitution to the political branches of the Federal Government.").

That Court, therefore, has "underscore[d] the limited scope of judicial inquiry" into issues related to immigration legislation. *Fiallo v. Bell*, 430 U.S. 787, 792 (1977). The power over matters related to "aliens is of a political character and therefore subject only to narrow judicial review." *Id.* (citation modified).  In particular:

> Any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government.  Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference.

substantive principles, and also mandates perfection in legislative drafting, which courts also must not demand. *See, e.g., Torres v. Lynch*, 578 U.S. 452, 472 (2016) (acknowledging "little doubt that Congress could have drafted [a different provision of the INA] with more precision than it did," that "the same could be said of many (even most) statutes," and that the Court has "long been mindful of that fact when interpreting laws").[13]

This Court has considered decisions from other courts on this issue and is persuaded by some[14] but not persuaded by others.[15] The fact that more district

---

*Diaz*, 426 U.S. at 81 n.17 (citation modified). Courts must employ "a narrow standard of review of decisions made by the Congress or the President" regarding immigration. *See id.* at 81–82.

[13] Instead of "expecting (let alone demanding) perfection in drafting," the Supreme Court has "routinely construed statutes to have a particular meaning even as [it] acknowledged that Congress could have expressed itself more clearly." *Id.* The question "is not: Could Congress have indicated (or even did Congress elsewhere indicate) in more crystalline fashion" that the statutory provision has a particular meaning? *Id.* at 472–73. Rather, the question is "simply: Is that the right and fair reading of the statute before us?" *Id.*

[14] *See, e.g., Altamirano Ramos v. Lyons*, No. 2:25-cv-9785-SVW-AJR, 2025 WL 3199872 (C.D. Cal. Nov. 12, 2025); *Vargas Lopez v. Trump*, No. 8:25CV526, 2025 WL 2780351 (D. Neb. Sept. 30, 2025); *Chavez v. Noem*, No. 3:25-cv-2525-CAB-SBC, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025); *Sandoval v. Acuna*, No. 6:25-cv-1467, 2025 WL 3048926 (W.D. La. Oct. 31, 2025); *Pena v. Hyde*, Civil Action No. 25-11983-NMG, 2025 WL 2108913 (D. Mass. July 28, 2025). Given the exigencies of the case, the Court refers the reader to the analysis in these decisions, and will not repeat it here.

[15] *See, e.g., Alvarez Ortiz v. Freden*, No. 25-CV-960-LJV, 2025 WL 3085032 (W.D.N.Y. Nov. 4, 2025); *J.U. v. Maldonado*, No. 25-CV-4836 (OEM), 2025 WL 2772765 (E.D.N.Y. Sept. 29, 2025); *Savane v. Francis*, No. 1:25-cv-6666-GHW, 2025 WL 2774452 (S.D.N.Y. Sept. 28, 2025); *Lopez Benitez v. Francis*, No. 25 Civ. 5937 (DEH), 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025).

courts nevertheless have decided this issue differently from this Court is neither binding nor persuasive.

Finally, given the relatively short duration of Petitioner's detention—approximately three months, *see* Dkt. 1 ¶ 10—any constitutional argument for habeas relief separate from the statutory one raised here, *if possible,* would be premature. *Compare Dep't of Homeland Sec. v. Thuraissigiam,* 591 U.S. 103 (2020), *and Demore v. Kim,* 538 U.S. 510 (2003), *and Shaughnessy v. United States ex rel. Mezei,* 345 U.S. 206 (1953), *and Doherty v. Thornburgh,* 943 F.2d 204 (2d Cir. 1991), *and Pena,* 2025 WL 2108913, *and Aguilar-Villalobos v. Kurzdorfer,* No. 24-CV-1110 (JLS) (W.D.N.Y. June 10, 2025), *with Black v. Decker,* 103 F.4th 133 (2d Cir. 2024), *and Velasco Lopez,* 978 F.3d at 842.

## CONCLUSION

For the reasons stated above, the Court grants Respondents' motion to dismiss (Dkt. 19) and denies the relief requested in the petition.

SO ORDERED.

Dated:    December 4, 2025
          Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE

10